UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 19-10312-LTS |
| ) | |
| v. ) | |
| ) | |
| MATTHEW HAVILAND, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Introduction

For reasons set forth below, the United States, by and through the undersigned Assistant U.S. Attorney, urges the Court to impose a guideline sentence of 21 months in prison to be followed by three years' supervised release and $300 in special assessment fees.

> [Mr. Haviland's] gruesome missives … induced nightmares, interfered with my life by flooding my mind for months with unwanted images, made my teaching more challenging, frightened … my family as well as my faculty assistant, and caused enormous distress. Haviland's vivid threats and the rage they expressed continue to haunt me ….

Victim 1.

> [T]he emotional intensity of [Haviland's] communications, their content, his direct threats, his uncertain mental state, the trajectory of his beliefs and emotional state, the relatively recent onset of his behavior, the ongoing political climate, and the wide availability of inflammatory, extremist online materials, require more detailed analysis of the risk he may pose and a more cautious approach … Mr. Haviland poses a moderate risk of both targeted violence and affective violence[] were he to be released from detention without supervision.

Forensic Psychiatrist.

Although all of the factors in 18 U.S.C. § 3553(a) must be considered in sentencing the defendant after a guideline sentencing range has been calculated, the government suggests that the most compelling considerations in this case, in light of the violent and disturbing nature of the offenses, involve protecting the public (including the victims), deterring future criminal conduct, and providing the defendant with mental health treatment – initially in a secure prison facility and then under strict supervision by Probation upon his release.

Proposed Findings of Fact

The government and defendant agree to adopt the facts set forth in the Presentence Report ("PSR"), paragraphs 8 through 18, *sans* any information that identifies the victims in this case, as set forth in Exhibit 1, attached hereto and incorporated herein by reference. By way of abbreviation, the charges against Matthew Haviland ("Haviland") stem from two incidents. First, over the course of about three-and-a-half hours on March 10, 2019, Haviland sent approximately 28 emails to Victim 1, a professor in Massachusetts. Several of those emails contained direct threats (e.g., "I will rip every limb from your body and eat it, piece by piece" and "I will bite through your eyeballs while you're still alive, and I will laugh while you scream"), and many others contained related violent sentiments (e.g., "You deserve to literally be ripped apart while you scream in horror," "I will torture you relentlessly until the end of time", and "I will have your face ripped off and eaten by me, personally. I will enjoy raping your body after you're dead. And that will only be the start"). Further, a number of Haviland's emails also referred to abortion and appeared to associate abortion with the violence he wished upon Victim 1 (e.g., "You deserve to have your legs torn off like all those fucking babies" and "[Y]ou will know pain as our babies have known it for forty years"). Second, beginning the evening of

March 15, 2019, and extending into the early morning hours of March 16, 2019, Haviland sent approximately twelve similar emails to the admissions department of one of the professional schools at the university where Victim 1 works. Those messages included, "You should be Murdered in cold blood" and "You people are Evil, *putrid*, and somebody shoudl [sic] BOMB your school for spreading the idea that it's okay to HATE people because of their race." When agents arrested Haviland, he admitted to sending the emails, and digital evidence recovered via search warrant confirmed they were sent interstate from Haviland's electronic devices or accounts.

  The investigation uncovered additional disturbing communications from Haviland to others.  On or about March 29 through April 3, 2019, the user of Haviland's email account posted comments on a website that contained an article criticizing a political candidate who endorsed legislation that would impose criminal liability on women who obtained abortions.  The posts included comments such as, "What a nice person you are. I would rip your body apart like one of the babies and see if you were so happy about it then."  On April 4 and April 5, 2019, a woman's medical center in Rhode Island that is advertised as an abortion clinic received approximately 114 voice messages from a male caller who, among other things, spoke of babies being murdered and drew a comparison between Nazis and a doctor who worked at the clinic. Haviland admitted to agents that he had placed the calls and apologized, stating that he had no intent to harm anyone.  Finally, the defendant also texted violent anti-abortion messages to another person (identified in the complaint as "Individual 2"), saying "… we want you to stop [killing babies]. Or we will kill you to do it.….."

Argument

The government's recommendation takes into account United States Sentencing Guidelines ("USSG"), including any applicable departure, and the sentencing factors set forth in 18 U.S.C. § 3553(a), as well as the propriety of any sentencing variance.

*A. The Sentencing Guideline Calculations*

In determining a just and reasonable sentence, the Supreme Court has directed trial courts first to calculate the appropriate sentencing range under the USSG. "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). No guideline departures apply in the instant case. As set out in the plea agreement, the parties have agreed that the defendant's Total Offense Level is 16. Probation concurs with this calculation and further notes that Haviland has no prior criminal record, resulting in a Criminal History Category (CHC) of I. *See* Presentence Report ("PSR") ¶¶ 46, 48-51. As a result, the defendant's Guideline Sentencing Range ("GSR") is 21 to 27 months' incarceration with a corresponding term of one to three years of supervised release. PSR ¶ 109.

*B. The 3553(a) Factors*

After calculating the appropriate sentencing range under the USSG, trial courts must carefully consider the factors enumerated in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50; *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006); *see also United States v. Merced*, 603 F.3d 204, 213 (3rd Cir. 2010) (A "sufficiently compelling" explanation is one that is grounded in the § 3553(a) factors). Here, the factors set forth in 18 U.S.C. § 3553(a) compel imposition of a term of incarceration of 21 months to be followed by 36 months' supervised release.

Clearly, the nature and circumstances of the offenses are profoundly disturbing.

Haviland sent messages to Victim 1 threatening graphic violence.  He threatened to rip Victim 1's face and limbs off and eat them; to rape Victim 1 after killing her/him; to bite through Victim 1's eyeballs and laugh while she/he screamed; and to torture Victim 1 relentlessly.  Victim 1, who informed agents that she/he had a very high tolerance for hate mail, expressed fear for her/himself and he/his family after receiving these emails. Victim 1's assistant, whose desk is outside Victim 1's office and who has access to and routinely reads Victim 1's university emails, also reported being worried for her/his safety because of the threats.  Five days later, Haviland sent approximately one dozen emails to Victim 2, stating that the school deserved to be bombed and that "[they] should be murdered in cold blood."

What is equally disturbing is that these threats were not isolated or directed solely at Victim 1 and a school with which she/he was associated.  Within two weeks of his threatening messages to Victim 2, Haviland posted a number of violent and threatening messages on the website Medium.com.  In response to a pro-choice article appearing on that website, Haviland stated, "… I would kill every one of you with my bare hands—or AT LEAST kill every abortion doctor…."  A day later, Haviland left approximately 114 voice messages for an abortion clinic in Rhode Island.  In some, the defendant sounds completely unhinged, screaming over the phone that he wanted the clinic to sue him so he could find the sharpest object in a courtroom and "stick it right through [their] eyeballs" and "smash in [their] heads … and [their] skin is going to start to come off and that's gonna be really funny for me…."  In other recorded messages, the defendant sounded remorseful and apologized for his threats.  Even an acquaintance of Haviland's turned over text messages that the defendant sent to another person (Individual 2) that threatened violence as a means of opposing abortions, including "We want you to stop [killing babies]. Or we will kill you to do it.  It's that Serious. It's not a Joke…."

The need to protect the public is front and center in this case. Although the defendant to date has not acted on these threats, his calculated choice of targets, his quickly escalating rhetoric, and his complete lack of control are cause for significant concern. Victim 1 in particular expressed extreme fear of the defendant and concern about Haviland's release and continuing to engage in violent and threatening behavior. The defendant's own expert concluded that Haviland "poses a moderate risk of both targeted violence and affective violence[] were he to be released from detention without supervision." This determination alone is alarming.

A sentence of 21 months in prison will protect the victims and the public – particularly those expressing pro-choice opinions or performing medical procedures at abortion clinics – while Haviland receives appropriate medical treatment in a secure facility. Such a sentence, along with strict conditions of supervised release, will also serve as a specific and generalized deterrence to the defendant and others who contemplate engaging in similar frightening conduct. The government suggests that its proposed sentence will minimize Haviland's "moderate" risk to recidivate and escalate or act upon his graphic threats of violence. It will also operate to provide just punishment for the offenses and promote respect for the law and the rights of others.

The need to provide Haviland with mental health treatment is also paramount here. The defendant's forensic psychiatrist recommends, among other things, a full medical work up to screen for underlying conditions followed by treatment, as indicated. The government concurs with this recommendation. Such an approach, however, initially should occur, and then continue over a prolonged period, within the secure confines of prison to alleviate any risk of "acting out" against the victims or others while receiving treatment. Upon his release from incarceration, strict terms of supervised release should guide the defendant's behavior, including but not limited to: staying away from the victims and having no contact, electronic, written or otherwise,

with them; staying away from abortion clinics and physicians who perform the procedure as well as staff; continuing any mental health treatment, including counseling and medication, if appropriate; reporting to Probation regularly; abstaining from drug and alcohol use; refraining from possessing a firearm or other destructive device; refraining from possessing or using a computer, internet-capable device, or similar electronic device or having access to any online service without the prior approval of the Probation Office; and, restricting his travel to Massachusetts.

## Conclusion

For the foregoing reasons, a sentence of 21 months' incarceration is necessary to achieve the goals of § 3553(a).  A term of 36 months' supervised release with appropriately tailored conditions is also necessary given the gravity of the offenses here and the need to monitor closely the defendant's post-incarceration conduct.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

        */s/William F. Bloomer*
        WILLIAM F. BLOOMER
        Assistant United State Attorney
        617-748-3100

**CERTIFICATE OF SERVICE**

Suffolk, ss.        Boston, Massachusetts
        December 5, 2019

I, William F. Bloomer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF.

        *William F. Bloomer*
        WILLIAM F. BLOOMER
        Assistant U.S. Attorney